**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
LESLY REMY,

                    Plaintiff,                                          **REPORT AND**
                                                                        **RECOMMENDATION**

          - against -
                                                                        CV 09-4444 (SJF) (AKT)

NYS DEPT OF TAXATION AND FINANCE,
NYS OFFICE OF TEMPORARY AND
DISABILITY ASSISTANCE OTDA, NYS
OFFICE OF CHILD SUPPORT
ENFORCEMENT/OCSE aka SCU a subdivision
of NYC HUMAN RESOURCES
ADMINISTRATION HRA, NYC EMPLOYEE
RETIREMENT SERVICES NYCERS, and
COMMISSIONERS, DIRECTORS, CHIEFS,
SUPPORT MAGISTRATES, NYS CLERK OF
COURT, NYS COURT OFFICER CAPTAIN
JOHN DOE #1, NYS COURT OFFICERS
JOHN/JANE DOE 1,2,3,4, NYC FIRE DEPT
EMS PARAMEDIC JOHN DOE #1 a sub
division, S. MICHAEL FONDOCARO,
JOETTE BLAUSTEIN, GEORGE CAFASSO,
IRA STEINBRG, ROBERT L. MEGNA, DAVID
HANSELL, GLADYS CARRION, FRANCIS
PARDU ABBADESSA, DIANE D'ALLESANDRO,
PETER PASSIDOMO, JOHN AMAN, C. DUNCAN
KERR, JAYNEE WALL, L. BISHOP, ROBERT
DOAR, SAWATAR SINGH, NYS ASSEMBLY
MEMBERS PHIL RAMOS, MICHELE TITUS,
VIVIAN COOK, CLERK GLORIA D'AMICO,
GOVERNOR DAVID PATTERSON, MAYER
MICHAEL BLOOMBERG CITY OF NEW
YORK AND STATE OF NEW YORK,

                    Defendants.
----------------------------------------------------------X

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

## I.  PRELIMINARY STATEMENT

Plaintiff Lesly Remy, appearing *pro se*, filed a Complaint alleging violations of his constitutional rights, pursuant to 42 U.S.C. § 1983, against various New York City and New York State agencies and their respective employees.  Presently before the Court are motions to dismiss by both sets of Defendants.  Collectively, the Defendants seek dismissal of the Complaint based on (1) lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure and (2) failure to state a claim pursuant to Rule 12(b)(6).  In the alternative, Defendants NYS Court Officer Captain John Doe #1 and NYS Court Officers John/Jane Doe 1,2,3,4 move pursuant to Rule 12(e) for a More Definite Statement.  Also before the Court are five motions by the Plaintiff which have been characterized as seeking the following relief: (1) to annul official documents such as income executions, tax warrants and restraining notices; (2) to annul other unidentified official documents; (3) administrative remedy with respect to Plaintiff's child support arrears; (4) declaration of emancipated status; and (5) relief from the October 2007 Judgment pursuant to Rule 60 of the Federal Rules of Civil Procedure.

These motions have been referred to me by Judge Feuerstein for a Report and Recommendation.  Based upon my review of the Complaint, the arguments advanced by both parties in their written submissions, and the applicable law, I respectfully recommend to Judge Feuerstein that the Defendants' motion to dismiss be GRANTED as to all Defendants except NYS Court Officer Captain John Doe #1 and NYS Court Officers John/Jane Doe 1,2,3,4.  In addition, I respectfully recommend that the motion for a more definite statement by Defendants NYS Court Officer Captain John Doe #1 and NYS Court Officers John/Jane Doe 1,2,3,4 be

DENIED.  Lastly, I respectfully recommend that Plaintiff's five motions seeking various relief be DENIED as moot.

## II.  FACTUAL BACKGROUND

Although not specifically provided in Plaintiff's Complaint, the following background facts that led to the filing of this pleading can be ascertained from the accompanying Exhibits to the Complaint.[1]  Plaintiff is the father of Ricardo Martin Remy.  Compl., Ex. A.  Plaintiff has been involved in Queens County Family Court proceedings since 1992 in connection with support payments for Ricardo.  *Id.,* Ex. P.  For example, on March 5, 2004, Ricardo's mother, Francine Mitchell, obtained an Order of Support against the Plaintiff.  *Id.,* Ex. A.  On December 12, 2006, Ricardo's mother filed a Petition for Violation of the March 5, 2004 Support Order.  *Id.,* Ex. J.

In January 2007, Plaintiff filed a petition seeking to terminate the March 2004 Support Order on the asserted grounds that Ricardo had become emancipated and, thus, Plaintiff was no longer obligated to make support payments.  *Id.,* Ex. A.   According to the Family Court Support Magistrates presiding over the case, hearings were held on May 30, 2007; July 10, 2007; and September 24, 2007.[2]  *Id.*  Support Magistrate Fondocaro issued a decision on October 3, 2007 finding that Ricardo was emancipated between November 10, 2005 and April 2, 2007 because he was employed.  *Id.*   However, Support Magistrate Fondocaro determined that Ricardo was no

---

[1]      In connection with a motion to dismiss under Rule 12(b)(6) the Court may consider not only the facts stated in the complaint but documents attached to the Complaint as exhibits or incorporated by reference.  *Nechis v. Oxford Health Plans, Inc.* 421 F.3d 96, 100 (2d Cir. 2005); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

[2]      Plaintiff however alleges in the Complaint that he attended modification hearings in December 2005, February 2007, March 2007, and May 2007.  *Id.*  at 14.

longer emancipated after April 2, 2007 since he was registered as a full-time student. *Id.* Thus, Support Magistrate Fondocaro determined that Plaintiff's support obligations were suspended during the period of Ricardo's emancipation and he entered a judgment stating that the amount of Plaintiff's current support arrears was $5,691.13. *Id.*

Plaintiff filed two objections with the Queens Family Court based upon the October 2007 Order, both of which were denied. Plaintiff then appealed the October 2007 Order, but the Appellate Division, Second Department dismissed the appeal on February 10, 2009 pursuant to Plaintiff's failure to assemble a proper record on appeal. *Id.,* Ex. K; *Matter of Remy v. Mitchell*, 60 A.D.3d 860, 874 N.Y.S.2d 387 (App. Div. 2d Dep't 2009) ("The failure to provide necessary transcripts inhibits the Court's ability to render an informed decision on the merits of the appeal."). Plaintiff's motion for reargument or leave to appeal to the Court of Appeals was denied on May 22, 2009. In addition, Plaintiff filed an Article 78 Petition regarding collection efforts taken against him by the City and State agency defendants. *Id.,* Ex. B. The Petition was dismissed on March 30, 2009, and Plaintiff's request for leave to appeal was denied on September 16, 2009. *Id.* The present action primarily arises from the October 2007 Order and the collection efforts taken against Plaintiff to satisfy that Order.

## III.    ALLEGATIONS SET FORTH IN THE COMPLAINT

Although the details of Plaintiff's pleadings and submissions are not entirely clear, Plaintiff's claims against the City and State agency Defendants appear to be based on the following allegations.

### A.    NYS Department of Taxation and Finance

Plaintiff alleges claims against the New York State Department of Taxation and Finance ("DTF"), its Commissioner Robert Megna, Deputy Commissioner Duncan Kerr and two compliance agents, Jaynee Wall and L. Bishop.  Compl. at 2-3.  Although not stated as such, the Court construes Plaintiff's claims against DTF to be Fourteenth Amendment Due Process violations and Fifth Amendment violations for undermining State appeal procedures.

Plaintiff asserts that the statutes the DTF operates under impose on "federal protections, constitution, bill of rights."  *Id.* at 3.  Additionally, Plaintiff alleges that the DTF agents "caused the skipping or over passing of state prescribed satisfaction pieces."  *Id.* at 8.  Specifically, Plaintiff takes issue with DTF's seizure of his vehicle to satisfy the October 2007 Order.  *Id.* at 6.  In addition, Plaintiff alleges that certain money warrant initiatives against him were erroneous and "wrought with error and inaccuracies."  *Id.* at 3.  This appears to be a reference to DTF crediting the NYS Office of Temporary and Disability Assistance pursuant to a claim the agency had against Plaintiff's STAR rebate which was also apparently used to satisfy judgments against the Plaintiff.[3]  *Id., Ex. D.

---

[3]    Plaintiff also alleges throughout the Complaint that as he filed for bankruptcy under Chapter 13, the automatic stay prevented any domestic child support arrears payment and procedures.  Plaintiff has since withdrawn all claims pursuant to this allegation.  Plf. Reply on States Cross Claims Pursuant to local rule 12.1 FRCP rule 7(4) A Memorandum of Law Instant Motion ("Plf. Reply to State") at 24.

**B.    NYS Office of Temporary and Disability Assistance**

Plaintiff asserts Fourteenth Amendment Due Process claims against the New York State Office of Temporary and Disability Assistance ( "OTDA") and  its Commissioner David Hansel. Plaintiff alleges that the OTDA "caused enumerable liens, garnishments to be effectuated against Plaintiff" based on legally defective information."  Compl. at. 9-10.  This allegation is also a reference to OTDA's claim against Plaintiff's STAR rebate.  *Id.,* Ex. D.

**C    NYS Office of Children and Family Services**

The allegations against the New York State Office of Children and Family Services ("OCFS") and its Commissioner Gladys Carrion appear to be principally grounded in Fifth and Fourteenth Amendment Due Process claims.  Compl. at 10.  Plaintiff asserts that OCFS failed to provide any social services to him which led to a strained relationship with his child.  *Id.* Plaintiff also alleges that the OTDA was to assist in making sure any Orders entered were "conducive to his ability to comply." *Id.*

**D.    NYC Office of Child Support Enforcement**

Plaintiff alleges Fourteenth Amendment Due Process claims against the New York City Office of Child Support Enforcement ("OCSE"), its commissioner Robert Doar, deputy commissioner Francis Pardu Abedessa and child support compliance analyst Sawatar Singh. Compl. at 11, 26.  Plaintiff maintains that OCSE is responsible for providing magistrates flawed information which led to erroneous money interest sums being charged and enforced against him.  *Id.* at 11-12.  According to the Plaintiff, OCSE was the agency that referred him to the DTF for the wrongful seizure of his vehicle.  *Id.* at 8-9.  Further, Plaintiff claims that he visited

the OCSE office on June 9, 2009 to forward a Complaint and to point out other alleged inaccuracies about the October 2007 Order which was not accepted by Defendant Singh.  *Id.* at 26-27.

### E.      NYC Employee Retirement Services

Plaintiff alleges ERISA violations and Fourteenth Amendment claims against the New York City Employee Retirement Services  ("NYCERS") as well as its Chief Director Diane D'Alessandra.  NYCERS, an entity established for administering pension/trust funds of city employees, violated  its fiduciary duties according to the Plaintiff.  Compl. at 13.  Plaintiff apparently takes issue with NYCERS honoring a garnishment execution form dated November 25, 2008 and alleges that NYCERS continues stealth garnishments of his pension.  *Id.*

### F.      NYS Magistrates

Regarding Magistrate Joette Blaustein, the Plaintiff's claim is grounded solely in Fourteenth Amendment Due Process violations.  He alleges that Defendant Blaustein "never really afforded me an opportunity to be heard, testify to the truthful happenings central at change circumstances" Compl. at 13.   Plaintiff alleges that he appeared before Defendant Blaustein for modification hearings on four separate occasions between 2005 and 2007 and that she purportedly failed to take into consideration factual evidence he provided which refuted accruing arrears and any upward modification in support payments.  *Id.* at 14.  Plaintiff also asserts that Magistrate Blaustein continued her jurisdiction and induced him to continue support payments although subsequent orders relieved him from doing so.  *Id.*

As to Magistrate S. Michael Fondocaro, Plaintiff's claims are premised on alleged Fourth, Fifth, Sixth, Seventh and Fourteenth Amendment violations. *Id.* at 15-17. The main factual allegation against Defendant Fondocaro concerns the October 2007 Order. Plaintiff claims that Defendant Fondocaro abused his authority and that his October 2007 Order contained "clear administration, district court defects Tending to impede the non-custodial parent in blanket branches of forward compliances, arrears, license suspension, parental visitation, emancipations, reversions to un-emancipated, un-adjudicated periods, flawed mathematical conclusions . . ." *Id.* at 15.

The Complaint also contains Fifth and Fourteenth Amendment claims against "Chief of Magistrates" Peter Passidomo and John Aman in their official capacities. *Id.* at 20. Plaintiff's claim against them appears to be one formulated on a theory that they failed to train the magistrates whom they supervised, especially Support Magistrates Blaustein and Fondocaro. *Id.*

## G. NYS Clerks

The Plaintiff brings Fifth and Fourteenth Amendment claims against Queens Family Court Clerks George Cafasso and Ira Steinberg. Compl. at 17. Plaintiff's allegations stem from the forms and procedures these defendants purportedly implemented against him. *Id.* Specifically, Plaintiff appears to be alleging that Cafasso and Steinberg did not properly enter money Orders and failed to file Orders on past violation petitions that were allegedly dismissed. *Id.* at 19.

Fourteenth Amendment claims are also asserted against Queens County Clerk Gloria D'Amico. *Id.* at 25. Plaintiff contends that state procedures from D'Amico's office were the "genesis" of it all. He appears to be referencing a July 3, 2000 garnishment form executed by D'Amico and alleges that it conflicts with New York Domestic Relations Law. *Id.* at 25-26.

## H.  NYS Court Officers

Plaintiff asserts § 1983 claims pursuant to the Fourteenth Amendment against one Captain and four Court officers currently captioned as "John Doe." Compl. at 20. Moreover, Plaintiff maintains that during a July 10, 2007 hearing in Queens Family Court, "[a]bout a dozen or so other officers took me down on the ground, while there one slammed a door to my head. The others kicked and stomped me from behind, others hurled racial epithets at me. . ." *Id.* at 21. Plaintiff maintains that he was threatened with chemical agents, was kept in restraints for sixteen hours, was forced into a small bathroom stall, and spent three days in central booking. *Id.* at 21-22.

## I.  NYC Fire Dept EMS Paramedic John Doe #1

Plaintiff states that a paramedic came to the scene after his arrest on July 10, 2007. Compl. at 21-22. The sole allegation against the paramedic is that he "began grapple twisting my ear as a form of punishment, causing me pain and suffering." *Id.* at 22. Based on this allegation, Plaintiff claims he "violated my guaranteed federal rights." *Id.* at 5. Thus, Plaintiff demands "a formal apology and command discipline against Paramedic John Doe #1." *Id.* at 32.

9

**J.     NYS Legislators**

State Assemblyman Philip Ramos as well as State Assemblywomen Vivian Cook and Michele Titus appear to be named in this litigation solely because either the Plaintiff, Ricardo, or the Queens Family Court resides in their respective districts.  Compl. at 23.  Plaintiff asserts Fifth and Fourteenth Amendment Due Process and Equal Protection claims against these Defendants and apparently seeks a "Federal Declaratory Judgment about their legislative responsibilities, duties as it pertains to why? Plaintiff is abated by statute or lack thereof on a resolution as to my claims." *Id.*   Plaintiff also seeks to have them  "individually or collectively draft legislation . . ." designed to alleviate the alleged defects within the Queens Family Court. *Id.* at 32.

**K.     NYC and NYS Executives**

Governor Patterson and Mayer Bloomberg are named as Defendants on Plaintiff's theory that they are accountable pursuant to *respondeat superior* liability.  Compl. at 25. Plaintiff states that his reason in naming them is "to notify them thru channels about it all."  *Id.*  Furthermore, Plaintiff seeks that they "cause, by executive power, order the termination of policy . . . " *Id.* at 32.

**L.     City and State of New York**

Lastly, Plaintiff includes as Defendants the City of New York and the State of New York.  However, the only mention of either of these governmental entities is Plaintiff's assertion that he is holding the State of New York liable under a *respondeat superior* theory of liability.  Compl. at 31.

## IV.   STANDARD OF REVIEW

### A.   Rule 12(b)(1)

Defendants move for dismissal pursuant to Rule 12(b)(1) on the grounds that Plaintiff's claims are barred by the *Rooker-Feldman* doctrine.  State Defs.' Mem. of Law in Supp. of Their Mot. to Dismiss the Complaint ("State Defs.' Mem.") at 21-24; City Defs.' Mem. of Law in Supp. of Their Mot. to Dismiss the Complaint ("City Defs.' Mem.") at 6-12.  "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  In reviewing a motion to dismiss under Rule 12(b)(1), the court "must accept as true all material factual allegations in the complaint, but [it is] not to draw inferences from the complaint favorable to Plaintiffs."  *Toomer v. Cty. of Nassau*, No. 07-CV-2495, 2009 WL 1269946, at *3 (E.D.N.Y. May 5, 2009) (quoting *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 10, 110 (2d Cir. 2004) (citation omitted)).  Furthermore, the Court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issues, but [it] may not rely on conclusory or hearsay statements contained in the affidavits."  *Id*.  "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence."  *Aurecchione v. Schoolman Transp. Sys., Inc*., 426 F.3d 635, 638 (2d Cir. 2005).

### B.   Rule 12(b)(6)

The Defendants also move to dismiss pursuant to Rule 12(b)(6) for failure to state a claim. State Defs.' Mem. at 9-19; City Defs.' Mem. at 16-19.  In reviewing a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted, the Court

must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006). The plaintiff must satisfy "a flexible 'plausibility standard.'" *Iqbal v. Hasty*, 490 F.3d 143, 157 (2d Cir. 2007), *rev'd on other grounds sub nom. Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The Court, therefore, does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.

The Supreme Court recently clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009), setting forth a two-pronged approach for courts to utilize in deciding a motion to dismiss. District courts are to first "identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." 129 S. Ct. at 1950. Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*. Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. at 1949 (quoting and citing *Twombly*, 550 U.S. at 556-57) (internal citations omitted).

In addition, where, as here, a plaintiff is proceeding *pro* se, the pleadings must be considered under a more lenient standard than that accorded "formal pleadings drafted by lawyers." *Bellamy v. Mt. Vernon Hosp.*, 07 Civ. 1801, 2009 U.S. Dist. LEXIS 54141, at *13-14 (S.D.N.Y. Jun. 26, 2009) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).  The pleadings must be "interpreted to raise the strongest arguments they suggest." *Bellamy*, 2009 U.S. Dist. LEXIS 54141, at *14 (quoting *Burgos v. Hopkins*, 14 F.2d 797, 790 (2d Cir. 1994)).

The Court recognizes that Plaintiff has submitted numerous documents outside of the pleadings for the Court's review.  It is well-settled that when documents outside the pleadings are presented in connection with a Rule 12(b)(6) motion to dismiss, the Court must either "exclude the additional material and decide the motion on the complaint alone" or "convert the motion to one for summary judgment under Fed. R. Civ. P. 56 and afford all parties the opportunity to present supporting materials." *Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000) (quoting *Fonte v. Bd. of Managers of Cont'l Towers Condo.*, 848 F.2d 24, 25 (2d Cir. 1988)).  Thus, a district court commits reversible error when it "relies on factual allegations contained in legal briefs or memoranda in ruling on a 12(b)(6) motion to dismiss." *Id.* at 83-84. Despite the nature of Plaintiff's submissions in opposition to the Moving Defendants' motion to dismiss, the Court finds it unnecessary to convert this motion into one for summary judgment as the Court has excluded from its review all matters outside the pleadings in ruling on the 12(b)(6) motion.

V.    **D**ISCUSSION

A.    ***Rooker-Feldman* Doctrine and Rule 12(b)(1)** [4]

In *Rooker v. Fidelity Trust Co.,* 265 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462 (1983), the Supreme Court held that a federal district court does not have the authority to review final judgments of a state court judicial proceeding, except for general constitutional challenges and reviews pursuant to a writ of *habeas corpus*. *See, e.g., Rooker,* 265 U.S. at 416 (holding that "[t]o do so would be an exercise of appellate jurisdiction. The jurisdiction possessed by the District Courts is strictly original."); *Feldman,* 460 U.S. at 482 ("a United States District Court has no authority to review final judgments of a state court in judicial proceedings."; *McKithen v. Brown*, 481 F.3d 89, 96 (2d Cir. 2007) ("The *Rooker-Feldman* doctrine merely recognizes that 28 U.S.C. § 1131 is a grant of original jurisdiction, and does not authorize district courts to exercise appellate jurisdiction over state-court judgments, which Congress has reserved to [the Supreme] Court.") (brackets omitted).

The Second Circuit has established four requirements for application of the *Rooker-Feldman* doctrine:

> First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must complain of injuries caused by the state-court judgment. Third, the plaintiff must invite district court review and rejection of that judgment. Fourth, the state-court judgment must have been rendered before the district court proceedings commenced.

---

[4]    When presented with a motion to dismiss under both Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, the Court "must decide the jurisdictional question first because a disposition of a Rule 12(b)(6) motion is a decision on the merits, and therefore, an exercise of jurisdiction." *Toomer*, 2009 WL 1269946, at *1 n.3 (citations omitted).

*McKithen v. Brown*, 481 F.3d 89, 97 (2d Cir. 2007) (internal quotation marks omitted) (brackets omitted).  The first and fourth requirements are procedural, while the second and third are substantive.  *Id.*

### 1.    *Procedural Requirements*

Defendants satisfy the first requirement in that Plaintiff lost the proceedings in state court which give rise to this action.  As evidenced by the numerous petitions filed by Plaintiff in Family Court seeking downward modification of the Support Orders against him, his petitions have continuously been denied but for the October 2007 Order, which credited the Plaintiff based on the temporary emancipated status of Ricardo.  Decl. of Jeremy I. Huntone in Supp. of City Defs.' Mot. To Dismiss ("Huntone Decl."), Exs. A-U.  In addition, Plaintiff's two objections to the Queens Family Court determinations regarding the October 2007 Order were denied as was his appeal to the Appellate Division, Second Department.  Huntone Decl., Exs. T-Z.  Moreover, Plaintiff's Article 78 petitions before the Queens County Supreme Court were denied as was his attempt to appeal the decision in the Article 78 proceeding.  Huntone Decl., Exs. AA-DD.

Defendants also satisfy the fourth requirement that the state court judgment must have been rendered before the federal district court proceedings commenced**.**  The last petition filed by Plaintiff seeking downward modification was filed on October 31, 2007, and that petition was denied on December 4, 2007.  Huntone Decl., Exs. S, U.   Plaintiff's November 1, 2007 and December 10, 2007 objections to the October 2007 Order were denied on December 6, 2007 and January 30, 2008, respectively.  Huntone Decl., Exs. T, V, W, X.   Further, Plaintiff's

appeal to the Second Department was denied on March 17, 2009. Lastly, Plaintiff's Article 78 petitions dated July 14, 2008 and August 28, 2008 were denied on March 30, 2009 and Plaintiff's motion for leave to appeal was subsequently denied on September 16, 2009. Accordingly, all of the state court decisions discussed here were rendered before the Plaintiff commenced this federal proceeding on October 16, 2009. Huntone Decl., Exs. AA-DD.

### 2. *Substantive Requirements*

The two substantive requirements that must be satisfied are (1) the plaintiff must complain of injuries caused by the state-court judgment and (2) the plaintiff must invite district court review and rejection of that judgment. To further define these requirements, the Second Circuit explained that the applicability of *Rooker-Feldman* turns on the "*causal relationship*" between the state court judgment and the injury of which the plaintiff complains in federal court. *McKitchen,* 481 F.3d at 98. District courts have interpreted this causal relationship to apply when an allegedly harmful action complained of were third-party actions produced by or in compliance with orders embodied in a state court judgment. *See Hoblock v. Albany County Bd. of Elections,* 422 F.3d 77, 88 (2d Cir. 2005) ("[w]here a state-court judgment caused the challenged third-party action, any challenge to that third-party action is necessarily the kind of challenge to the state judgment that only the Supreme Court can hear."); *Glatzer v. Barone*, 614 F. Supp. 2d 450, 464 (S.D.N.Y. 2009) (holding that *Rooker-Feldman* "turns not on the similarity between a party's state and federal claims, but rather on the *causal relationship* between the state court judgment and the injury of which the party complains in federal court.") (internal quotations omitted).

If constitutional claims presented to a United States District Court are "inextricably intertwined" with the state court's ruling, the District Court is, in essence, being called upon to review the state court decision. *See Feldman*, 460 U.S. at 483. Furthermore, this Court has recognized that "district courts lack subject matter jurisdiction of federal constitutional claims that are inextricably intertwined with a challenged state-court judgment, even if such claims were not raised in state court." *Vartabedian v. Dounias,* 2006 U.S. Dist. LEXIS 94160, at *11 (E.D.N.Y. 2006).

Applying these principles, it becomes clear that the *Rooker-Feldman* doctrine was established to prohibit federal review of the type of claims asserted by Plaintiff, which essentially are collateral attacks against the Orders rendered against him and the enforcement methods employed with regard to those Orders. In fact, this Court's analysis and ruling in *Sorenson v. Suffolk County Child Support Enforcement Bureau*, No. 07-CV-3755, 2009 WL 580426, at *6 (E.D.N.Y. Mar. 5, 2009) provides support that the claims asserted by the Plaintiff should be barred. In *Sorenson*, this Court held that

> . . . plaintiff's claims in this case all arise from the purported violation of his constitutional rights based upon Suffolk County's attempt to collect such arrears through, among other things, garnishment. In other words, it is clear, including by virtue of the 2003 Order of the Family Court dismissing plaintiff's petition to have such arrears vacated, that plaintiff has been unsuccessful in obtaining the relief he desires in state court and that this lawsuit is an effort to obtain that same relief. However, any attempt to utilize the federal courts to, in essence, challenge the existing judgment regarding child support arrears, or the County's enforcement of that judgment, is barred by the *Rooker-Feldman* doctrine.

*Sorenson*, 2009 WL 580426, at *6. In the case at bar, Plaintiff's allegations against the various

City and State agencies as well as their officers and employees stem from their exercise of

enforcement procedures that various statutes require to be applied to child support arrears after

Orders have been entered. Regarding Defendants DTF, OTDA, OCSE, NYCERS, and NYS

Clerks, Plaintiff's allegations against them are based on: (1) the seizure of his vehicle; (2) the

entering of erroneous Orders and money sums against him; (3) withholding his middle class

STAR Rebate; (4) withholding his income; (5) suspending his license; and (6) effectuating

other liens and garnishments against him. These alleged harmful actions were actions of third-

parties which were produced by, in compliance with, and can be considered inextricably

intertwined with, the Support Orders entered against the Plaintiff in Queens Family Court.

Moreover, it is irrelevant whether Plaintiff did or did not raise the current constitutional

challenges in state court.

Additionally, Plaintiff 's allegations against NYS Magistrates Joette Blaustein and S.

Michael Fondocaro talk about the actual procedures used in Family Court that led up to the

October 2007 Order as well as the other Orders entered against the Plaintiff. These claims are

direct challenges to the Support Orders against Plaintiff, and, therefore, are injuries caused by

the state court judgment for which the Plaintiff seeks federal district court review. *See Chestnut

v. Gabler*, No. 06-CV-534E, 2007 WL 529556, at *3 (W.D.N.Y. Feb. 13, 2007) (In an action

against a Family Court magistrate judge, the court concluded that " the complaint essentially

alleges that plaintiff's constitutional rights were violated during the course of the Family Court

proceedings and plaintiff now seeks, in part, to challenge in this Court the orders issued in those

proceedings. To the extent plaintiff is asking this Court to review the proceedings before the

Allegany County Family Court, said review by this Court is barred by the *Rooker-Feldman* doctrine and the complaint must be dismissed accordingly."); *George v. Letren*, No. 97-CV-599, 1998 WL 684857, at *3 (S.D.N.Y. Sept. 30, 1998) (In an action against a Connecticut Superior Court Justice, the court held that "[t]o the extent that Plaintiff's claims can be construed as raising constitutional violations, his allegations are directed solely at perceived error by the state courts in reaching their decisions in the underlying paternity and child support actions. Therefore, since Plaintiff's claims are inextricably intertwined with the Family Court's judgment and proceedings, this Court has no subject matter jurisdiction over his claims.").

Accordingly, I respectfully recommend to Judge Feuerstein that Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) be GRANTED as to Defendants DTF, OTDA, OCSE, NYCERS, Robert L. Megna, C. Duncan Kerr, Jaynee Wall, L. Bishop, David Hansell, Robert Doar, Francis Pardu Abbadessa, Sawatar Singh, Diane D'Alessandro, Support Magistrates Joette Blaustein and S. Michael Fondocaro, Queens Family Court Clerks George Cafasso,  Ira Steinberg, and Queens County Clerk Gloria D'Amico.

## B.    Rule 12(b)(6) Failure to State a Claim

Notwithstanding the lack of subject matter jurisdiction over most of the Defendants, the Court next addresses whether the allegations set forth in the Complaint are sufficiently pled to withstand Defendants' motions to dismiss under Rule 12(b)(6)**.**

### 1.    *Individual Defendants*

Plaintiff has sued numerous City and State employees under 42 U.S.C. § 1983.   Section 1983 provides that:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured. . . .

42 U.S.C. § 1983. As the Supreme Court has explained, personal-capacity suits brought pursuant to Section 1983 "seek to impose personal liability upon a government official for actions he takes under color of state law," while official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham,* 473 U.S. 159, 165 (1985) (internal quotations omitted). In order to state a claim for personal liability under Section 1983, the Plaintiff must allege "that the official, acting under color of state law, caused the deprivation of a federal right." *Id.* at 166; *Graham v. Maraio*, 722 F.2d 1013, 1016 (2d Cir. 1983). More is required, however, in an official-capacity action "because a governmental entity may be held liable under Section 1983 only when found to be a 'moving force' behind a constitutional deprivation; that is, the entity's 'policy or custom' must have played a part in the violation of federal law. " *Davis v. County of Nassau*, 355 F. Supp. 2d 668, 675 (E.D.N.Y. 2005) (quoting *Kentucky*, 473 U.S. at 166).

Section 1983 imposes personal liability only upon an individual defendant "who personally 'subjects, or causes to be subjected' any person to the deprivation of any federal right." *Dove v. Fordham Univ.*, 56 F. Supp. 2d 330, 336 (S.D.N.Y. 1999). It is well-settled, therefore, that "personal involvement" on the part of named individual defendants "is a prerequisite to an award of damages under § 1983." *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 122 (2d Cir. 2004). A complaint that fails to allege the personal involvement of an individual defendant is "fatally defective on its face" and is subject to a

motion to dismiss. *See Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 886 (2d Cir. 1987).

An individual defendant's "personal involvement" in the deprivation of a Plaintiff's constitutional rights in violation of Section 1983 can take several different forms. First, the individual defendant may have directly participated in the alleged conduct. *Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 229 (2d Cir. 2004). Absent such direct participation, a supervisor will be considered "personally involved" in an alleged constitutional deprivation if he: (1) failed to remedy a wrong after learning of the violation; (2) created a policy or custom under which unconstitutional practices occurred, or failed to end such an existing policy or custom; (3) was grossly negligent in supervising subordinates who committed wrongful acts; or (4) exhibited deliberate indifference to the rights of others by failing to act on information indicating that unconstitutional acts were occurring. *See Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 254 (2d Cir. 2001); *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994). An individual defendant, however, may not be held liable "merely because he held a high position of authority." *Black v. Coughlin,* 76 F.3d 72, 74 (2d Cir. 1996).

Plaintiff brings claims against individuals: (1) Robert L. Megna, C. Duncan Kerr, Jaynee Wall, and L. Bishop of DTF; (2) David Hansell of OTDA; (3) Gladys Carrion of OCFS; (4) Robert Doar, Francis Pardu Abbadessa and Sawatar Singh of OCSE; and (5) Diane D'Alessandro of NYCERS. However, with the exception of Defendants Wall, Bishop and Singh,[5] the Plaintiff merely names these Defendants in their capacity as heads of the numerous City and State agencies against whom he asserts claims. Indeed, Plaintiff fails to allege any

---

5  The Court will address these three Defendants further on with their respective agencies.

personal involvement of any kind regarding these Defendants. Accordingly, the Court finds that the Complaint fails to state a viable Section 1983 claim against the individual Defendants for violating Plaintiffs' constitutional rights, with the exception of Defendants Wall, Bishop and Singh.

Any attempt by Plaintiff to allege that his Complaint names these defendants in their official capacity fails as well because such claims are duplicative of the liability asserted against the various agencies. *See, e.g.*, *Kentucky,* 473 U.S. at 165 (holding that suit against those in their official capacities "generally represent only another way of pleading an action against an entity of which an officer is an agent."); *Brandon v. Holt*, 469 U.S. 464, 471 (1985) (official capacity claim against public officer is a claim against the office held by that person, rather than against the particular individual who occupies that office at the time the claim arose); *Guzman v. Jacobson,* No. 97-CV-3385, 1999 WL 14667, at *2 (E.D.N.Y. Jan. 11, 1999) (suit against the Commissioner of the Department of Corrections, or any ERU officer, in their official capacities, may be considered the same as an action against the City of New York); *Orange v. County of Suffolk*, 830 F. Supp 701, 706-07 (E.D.N.Y. 1993) (official-capacity claims redundant because claim is made against local governmental entity).

### 2. *DTF (including Jaynee Wall and L. Bishop) & OTDA*

As noted above, to state a claim under Section 1983, a plaintiff must allege conduct attributable to a *person* acting under color of state law who deprived Plaintiff of a right secured by the Constitution of the United States. *See Feingold v. New York*, 366 F.3d 138, 159 (2d Cir. 2004). Neither states nor their agencies are considered "persons" within the meaning of Section 1983. *See Brown v. New York State Unified Court Sys.*, 261 Fed. Appx. 307, 307-08 (2d Cir.

2008) (citing *Will v. Michigan Dep't of State Police*, 391 U.S. 58, 71 (1989)); *Zuckerman v. Appellate Div., Second Dep't, Supreme Court of State of New York*, 421 F.2d 625 (2d Cir. 1970). Since DTF and OTDA are state agencies, neither can be held liable under Section 1983, and Plaintiff's attempt to assert *Monell* claims against these or other State entities must consequently fail. *See* Plf. Reply to State at 11.

Defendants DTF and OTDA also argue that Plaintiff's claims against them stem from two events, the seizure of Plaintiff's car and the application of Plaintiff's STAR rebate refund towards his child support arrears. State Def. Mem. at 9. Plaintiff makes specific allegations against Defendant DTF agents Jaynee Wall and L. Bishop, claiming they were personally involved in the seizure of his automobile. However, these Defendants argue that both enforcement mechanisms complained of by the Plaintiff are authorized by statute.

When a child support account goes into arrears, valid enforcement methods include: (1) issuance of income executions; (2) intercepting state and federal income tax returns; (3) suspension of a driver's license; (4) imposing liens on real and personal property; and (5) seizure of assets. *See* 42 U.S.C. § 666(a)(1)-(16); Social Security Act § 111-t, 111-u. It is significant to note that the Second Circuit has previously upheld, against due process challenges, the procedures applied by the State of New York in collecting child support arrears. *See Weinstein v. Albright*, 261 F.3d 127, 142-43 (2d. Cir. 2001) (upholding procedure of denying a passport to a person in arrears); *Martin v. Supreme Court of N.Y.*, 644 F. Supp. 1537, 1543 (N.D.N.Y. 1986) ("The income execution issued pursuant to a valid New York judgment may not be attacked in this court.")

In light of the fact that New York State's authorized collection mechanisms have

withstood prior constitutional challenges, Plaintiff's attempt to state § 1983 claims against Wall and Bishop is a futility.

### 3.    *OCFS*

Plaintiff cannot allege Section 1983 claims against a state agency such as OCFS. However, Defendant OCFS additionally argues that the claims against it are entirely conclusory. State Def. Mem. at 11. Even construing the Complaint liberally, Plaintiff fails to allege any facts that would give rise to a claim against OCFS. Plaintiff asserts mere general conclusions of law when he claims that OCFS is liable under the Fifth and Fourteenth Amendments. The Complaint is devoid of any specific facts to support such claims. According to Plaintiff, OCFS failed to provide him services, but he never identifies any specific service OCFS purportedly failed to provide. As such, the Court finds that Plaintiff has failed to assert a claim against Defendant OCFS.

### 4.    *OCSE (including Sawatar Singh) & NYCERS*

The Supreme Court in *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658 (1978) opened the door for municipalities and their agencies to be held liable under Section 1983. However, to hold a municipality liable in such an action, "a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Batista v. Rodriguez,* 702 F.2d 393, 397 (2d Cir. 1983); *Ricciuti v. New York City Transit Auth.*, 941 F.2d 119, 122 (2d Cir. 1991). A municipal entity may only be held liable where the entity itself commits a wrong. *Monell*, 436 U.S. at 691; *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006).

In the instant case, the Court finds that the Complaint does not identify a single policy or custom which would warrant holding such agencies liable in connection with Plaintiff's constitutional challenges to the efforts used to collect child support arrears. *See Johnson v. New York,* 21 Fed. Appx. 41, No. 01-7073, 2001 WL 1205363, at *2 (2d Cir. Oct. 10, 2001) (dismissal of *Monell* claim against County's enforcement unit where no allegations was in accordance with municipal policy or custom); *Sorenson*, 2009 WL 580426, at *4 ("a *Monell* claim against a county child support enforcement unit, or related entity, must be dismissed where plaintiff has not alleged that any wrongful acts were part of a municipal policy or custom.").

Moreover, the specific allegations against OCSE employee Sawatar Singh fail to disclose any facts to support an alleged Fourteenth Amendment violation by Defendant Singh. The allegation that Singh refused to accept a complaint by Plaintiff challenging the October 2007 Order does not inform the Court of how Plaintiff's constitutional rights were violated. Accordingly, Plaintiff has failed to assert a claim against Defendants OCSE, Sawatar Singh, and NYCERS.[6]

---

[6] The City Defendants also argue that even if Plaintiff provided a factual basis upon which to make his ERISA claim plausible, ERISA's provisions do not apply to an NYCERS. City. Defs.' Mem. at 19. NYCERS is a government pension plan established and maintained for its employees. ERISA excludes from its coverage "any employee benefit plan if . . . such plain is a governmental plan." *See* 29 U.S.C. §1003(b)(1); *see also Hamad v. Nassau County Medical Center*, 191 F. Supp. 2d 286, 303 (E.D.N.Y. 2000). Accordingly, Plaintiff's ERISA claim also fails.

**5.** *NYS Legislators*

The State Assembly Defendants contend that they are entitled to absolute legislative immunity regarding the claims asserted against them. State Defs.' Mem. at 11-13. It is indeed settled law that State Legislators are entitled to absolute immunity from civil liability for their legislative activities. See, e.g., *Tenney v. Brandhove*, 341 U.S. 367, 376 (1951) ("The claim of an unworthy purpose does not destroy the privilege. Legislators are immune from deterrents to the uninhibited discharge of their legislative duty, not for their private indulgence but for the public good."); *Almonte v. City of Long Beach*, 478 F.3d 100, 106 (2d. Cir. 2007) ("Local legislators, like their counterparts on the state and regional levels, are entitled to absolute immunity for their legislative activities."); *State Employeees Bargaining Agent Coalition v. Rowland*, 494 F.3d 71, 82 (2d Cir. 2007) ("Absolute legislative immunity attaches to all actions taken in the sphere of legitimate legislative activity.") (internal quotations omitted). The Supreme Court goes further and declares that Legislators should "be protected not only from the consequences of litigation's results but also from the burden of defending themselves." *Dombrowski v. Eastland*, 387 U.S. 82, 85 (1967).

Based on the Complaint, it appears that Plaintiff is attempting to hold Legislators Ramos, Titus and Cook liable on the theory that they failed to propose or pass legislation for the benefit of those similarly situated to Plaintiff in Family Court. However, proposing and voting on legislation are clearly within the sphere of legitimate legislative activity. Accordingly, the claims alleged by the Plaintiff against the Legislative Defendants are barred by the doctrine of legislative immunity.

6.     *NYS Magistrates*

a.     **Support Magistrates**

The Support Magistrate Defendants state that any claims asserted against them are barred by the doctrine of absolute judicial immunity.  State Defs.' Mem. at 15-16.   Under the doctrine of absolute judicial immunity, a judge cannot be sued for actions taken in the course of his judicial function.  *See Stump v. Sparkman*, 435 U.S. 349, 356 (1978) (explaining the doctrine of judicial immunity applies to suits under 42 U.S.C. § 1983). This doctrine applies even when the judicial acts complained of were in excess of the judge's jurisdiction and/or were done maliciously or corruptly. *Mireles v. Waco*, 502 U.S. 9, 11 (1991) ("judicial immunity is not overcome by allegations of bad faith or malice"); *Stump*, 435 U.S. at 359 (holding that the doctrine protects judges even if the judge's "exercise of authority is flawed by the commission of grave procedural errors"); *Maestri v. Jutkofsky*, 860 F.2d 50, 52 (2d Cir. 1988) (holding that judicial immunity "protects judges from civil actions even when they perform judicial acts in excess of their authority" as well as acts done maliciously or corruptly).

However, there is a distinction between excess of jurisdiction and a clear absence of all jurisdiction over the subject-matter. *Stump*, 435 U.S. at 356 ("[a] judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction") (internal quotations omitted); *Maestri*, 860 F.2d at 52 ("a judge who performs a judicial act in excess of his or her jurisdiction is immune to civil suit; a judge who

acts in the clear absence of jurisdiction is not."). Thus, a judge will be denied immunity only where the judge acted in the clear absence of jurisdiction and the judge knew he was acting as such. *See Maestri*, 860 F.2d at 53. In addition, immunity could be denied when the actions taken are not judicial. *Mireles,* 502 U.S. at 11 ("a judge is not immune from liability for non-judicial actions, *i.e.* actions not taken in the judge's judicial capacity."). To determine whether the action of a judge is judicial, one must ask whether "it is a function normally performed by a judge" and whether the parties "dealt with the judge in his judicial capacity." *Stump,* 425 U.S. at 362.

In the present case, even assuming the facts alleged by the Plaintiff to be true, the Support Magistrates are immune from liability. Plaintiff's argument that the Support Magistrates are not "judges" entitled to judicial immunity is incorrect. This court has already determined that Support Magistrates in the Family Court performing judicial tasks are afforded immunity. *See Lomtevas v. Cardozo,* No. 05-CV-2779, 2006 WL 229908, at *5 (E.D.N.Y. Jan. 31, 2006) ("As a support magistrate in the Family Court, Clark's actions were the same as those of a judge. Her decisions were both judicial in nature and subject to review. Therefore, she is entitled to absolute immunity for her role as a support magistrate.").

In addition, even assuming Plaintiff's argument that the Magistrates exceeded their jurisdiction by forcing Plaintiff to pay erroneous child support arrears is true, such argument would still not fall under the "clear absence of jurisdiction" category needed to open the door to potential liability.[7] To illustrate what a clear absence of jurisdiction would be, courts have

---

[7]     We note that the assertion that the Magistrates exceeded their jurisdiction is simply incorrect.   The New York Family Court Act § 451 states:

provided the example of a probate judge, with jurisdiction over wills and estates, attempting to try a criminal case. However, in a situation where a judge in a criminal court convicted a defendant of a nonexistent crime, that judge would merely be acting in excess of jurisdiction. *Stump*, 435 U.S. at 357 n.7. Thus, the allegation that the Support Magistrates exceeded their jurisdiction in forcing Plaintiff to continue to pay child support is more akin to the latter illustration where the subject matter before the Support Magistrates is a matter that would be tried in their respective court.

### b.  Chief of Magistrates

The Chief of Magistrate Defendants Passidomo and Aman argue that the claims asserted against them are entirely conclusory and insufficient. State Defs.' Mem. at 17. Plaintiff maintains that the Chief of Magistrates failed to provide training to the Support Magistrates. However, the Chief of Magistrate Defendants were sued in their official capacities and are therefore immune from suit in this instance.

The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subject of any Foreign States." U.S. Const. amend. XI; *see also Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 235 (2d Cir. 2006) (explaining that

---

[T]he court has continuing jurisdiction over any support proceeding brought under this article until its judgment is completely satisfied and may modify, set aside or vacate any order issued in the course of the proceeding, provided, however, that the modification, set aside or vacatur shall not reduce or annul child support arrears accrued prior to the making of an application pursuant to this section.

the Eleventh Amendment "has been interpreted also to bar federal suits against state governments by a state's own citizens as well as state court actions against state governments") (citation omitted)). Simply stated, "the Eleventh Amendment means that, 'as a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity,' or unless Congress has 'abrogate[d] the states' Eleventh Amendment immunity when acting pursuant to its authority under Section 5 of the Fourteenth Amendment.'" *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) (quoting *Woods*, 466 F.3d 232, 235). Moreover, [t]he immunity recognized by the Eleventh Amended extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of the state." *Woods,* 466 F.3d at 236 (internal quotation marks omitted). Although some courts consider many factors, the "ultimate inquiry involves an overall assessment of the 'relationship between the State and the entity in question.'" *Gollomp,* 568 F.3d at 366 (quoting *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997). "A cardinal component of this relationship is the "the question whether a money judgment against a state instrumentality or official would be enforceable against the State." *Id.*

It is well settled that in passing 42 U.S.C. § 1983, Congress did not abrogate the States' immunity under the Eleventh Amendment. *See Dube v. State Univ. of New York*, 900 F.2d 587, 594 (2d Cir. 1990). Likewise, New York State has not consented to be sued under Section 1983. *See McNamara v. Kaye*, 06-CV-5169, 2008 WL 3836024, at *8 (E.D.N.Y. Aug. 13, 2008). Defendant Chief Magistrates of the New York State Family Court, as part of the New York State Unified Court System (*see* N.Y. Const. Art. VI, § 1(a)), are an "arm of the State" and any money judgment entered against them would be enforceable against the State as

they were sued in their official capacities. *See Gollomp*, 568 F.3d at 368 (holding that "the New York State Unified Court System is unquestionably an 'arm of the State,' . . . and is entitled to Eleventh Amendment sovereign immunity") (internal citation omitted)); *see also Richards v. New York*, 597 F. Supp. 692, 693 (E.D.N.Y. 1984), *aff'd* 767 F.2d 908 (2d Cir. 1985) ("First, a state, its agencies and state officials sued in their official capacities are all immune from suit");

Accordingly, Plaintiff's Section 1983 claims against the Chief Magistrates are barred by the Eleventh Amendment. S*ee Davis v. New York*, 106 Fed. Appx. 82, 83 (2d Cir. 2004) ("Specifically, we affirm the district court's holding that the Eleventh Amendment bars [plaintiff's] claims against the State of New York, the New York State Unified Court Systems, and [individual court defendants] in their official capacities."); *Humphrey v. New York*, 108 Fed. Appx. 691 (2d Cir. 2004) (citing *Richards*, 597 F. Supp. at 693) (affirming dismissal of *pro se* plaintiff's claims against New York State, state courts and state judges because "Eleventh Amendment immunity protects state agencies, including state courts")

### 7. *NYS Court Clerks*

#### a. **Family Court Clerks**

Family Court Clerk Defendants Cafasso and Steinberg maintain that Plaintiff's claims against them are conclusory, and thus, fail to state a claim. State Defs.' Mem. at 16-17. However, one does not have to make such a determination since clerks, in certain circumstances, can avail themselves of the same immunity afforded to judges. Indeed, "[a] private actor may be afforded the absolute immunity ordinarily accorded judges performing

their authorized judicial functions if the private actor's role is 'functionally comparable' to the roles of those judges." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009).

Court clerks are afforded judicial immunity where the tasks at issue are judicial in nature, including the performance of functions at the direction of judges and certain administrative tasks related to a particular case. *See Bliven*, 579 F.3d at 210-11; *Isasi v. Heinemann*, 08-CV-5284, 2009 WL 159601, at *2 (E.D.N.Y. Jan. 21, 2009). As previously discussed, to determine whether an act by court clerk is "judicial" in nature, the court must look to the nature and function of the action and to the expectation of the parties, in particular, whether the act "is a function normally performed by a judge" and whether the parties "dealt with the judge in his judicial capacity." *Stump,* 435 U.S. at 362 (1978); *Tucker v. Outwater*, 118 F.3d 930, 933 (2d Cir. 1997).

In employing the requisite analysis with respect to a judge, the Supreme Court has generally concluded that acts arising out of, or related to, individual cases before the judge are considered judicial in nature. Actions that are judicial in nature include issuing a search warrant, *see Burns v. Reed*, 500 U.S. 478, 492 (1991) ("the issuance of a search warrant is unquestionably a judicial act"), and directing court officers to bring a particular attorney before the judge for a judicial proceeding, *see Mireles*, 502 U.S. at 12-13. "In contrast, a judge's '[a]dministrative decisions, even though they may be essential to the very functioning of the courts, have not similarly been regarded as judicial acts.'" *Bliven*, 579 F.3d at 210 (quoting *Forrester v. White,* 484 U.S. 219, 228 (1988)). Such administrative actions include demoting or dismissing a court employee, *see Forrester*, 484 U.S. at 229-30; promulgating a code of conduct for attorneys, *see Supreme Crt. of Virginia v. Consumers Union of United States, Inc.*,

32

446 U.S. 719, 731 (1980); and compiling general jury lists to affect all future trials, *see Ex parte Virginia*, 100 U.S. 339, 348 (1879). However, the fact that the acts may seem "administrative in nature" does not abrogate immunity where such acts are undertaken pursuant to the direction of a judge or judicial officer. *See Rodriguez v. Weprin,* 116 F.3d 62, 67 (2d. Cir. 1997) ("Even when functions that are more administrative in character have been undertaken pursuant to the explicit direction of a judicial officer, . . . that officer's immunity is also available to the subordinate.") (internal quotations and citation omitted); *Isasi*, 2009 WL 159601, at *2 ("Court clerks have been granted absolute immunity where the judge was the ultimate decision maker and the clerk was just carrying out the orders of the judge."); *McNamara v. Kaye*, 06-CV-5169, 2008 WL 3836024, at *6-7 (E.D.N.Y. Aug. 13, 2008) (dismissing Section 1983 claims against "John Doe" and "Jane Roe" defendants -- defined as "any clerical personnel, law secretaries, legal staff or law clerks at the Second Department or Court of Appeals who acted under color of state law to intentionally deprive plaintiff of her constitutional rights" -- because to the extent such individuals "were involved in an official capacity with the decision-making process in plaintiff's proceedings, those personnel, like the judges they were assisting, are accorded immunity from suit").

In light of the foregoing, the Court concludes that the actions of the Family Court Clerks complained of, which acts concerned the entry of money Orders against the Plaintiff, were judicial in nature. Accordingly, the Family Court Clerks are immune from the claims asserted against them because they were merely carrying out the Judge's rulings.

b.      **Queens County Clerk**

Defendant Gloria D'Amico contends that even if the facts in the Complaint are deemed true (i.e., that property was seized from Plaintiff pursuant to a July 3, 2000 garnishment executed by Defendant D'Amico), Planitiff's § 1983 claim would nevertheless be untimely. State Defs.' Mem. at 18-19.   The statute of limitations in New York for a claim under § 1983 is three years. *See, e.g., Owens v. Okure*, 488 U.S. 235, 251 (1989); *Eagleston v. Guido,* 41 F.3d 865, 871 (2d Cir. 1994).   Furthermore, the limitations period begins to run when the plaintiff knows of the injury which is the basis of the action.  *Pearl v. City of Long Beach,* 296 F.3d 76, 80 (2d Cir. 2002).  As the only allegation against Defendant D'Amico is in reference to the July 3, 2000 garnishment, and assuming property was actually seized pursuant to the executed garnishment, Plaintiff's claim is asserted more than three years after the underlying conduct at issue and is therefore untimely.

**8.      *NYC and NYS Executives***

In one instance where Plaintiff expressly alleges his theory of liability, Plaintiff attempts to hold Governor Patterson and Mayor Bloomberg accountable under the doctrine of *respondeat superior*.   However, Defendants correctly point out that the doctrine of *respondeat superior* is not a valid basis for liability under 42 U.S.C. § 1983.  *See Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937, 1948 (2009) ("[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior* . . . . [V]icarious liability is inapplicable to . . . § 1983 suits"); *Duchesne v. Sugarman*, 566 F.2d 817, 830 (2d. Cir. 1977) ("The doctrine of respondeat superior is unavailable as a basis for imposing liability under § 1983; there must be some showing of personal responsibility.").

34

Accordingly, Plaintiff fails to state a claim under § 1983 against Governor Patterson and Mayor Blumberg.

### 9. *City and State of New York*

Although Plaintiff names the City of New York as a Defendant, he fails to assert any claims against the City. Therefore, this cause of action cannot stand.

Regarding the State of New York and Plaintiff's *respondeat superior* theory of liability, even putting Eleventh Amendment considerations aside, the State of New York cannot be considered a "person" capable of being sued under § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64 (1989); *Komlosi v. New York State Office of Mental Retardation and Developmental Disabilities*, 64 F.3d 810, 815 (2d Cir. 1995). Here too, then, Plaintiff fails to assert a claim against the State of New York.

### 10. *NYC Fire Dept EMS Paramedic John Doe #1*

The City Defendants argue that Plaintiff merely sets forth legal conclusions against the Defendant Paramedic and fails to provide factual allegations to make his claims plausible. City. Def. Mem. at 19. With regard to Defendant Paramedic John Doe #1, the Court agrees. Throughout the entire Complaint, Plaintiff makes only two references to the Paramedic which purportedly serve as the basis for a claim against him. The first is that the Paramedic "began grapple twisting my ear" and the second is that he "violated my guaranteed federal rights." Nowhere in the Complaint does Plaintiff allege or explain what guaranteed federal right was violated by this Defendant. Even construing the Complaint liberally as the Court must, I find that these two allegations standing alone are insufficient to state a cause of action.

### 11.  *NYS Court Officers*

Although unclear from Defendants' motion papers, it appears that the NYS Court Officer Defendants are bringing a motion to dismiss, or alternatively, are making a motion pursuant to Rule 12(e) for Plaintiff to file a more definite statement.  State Defs.' Mem. at 17-18, 24.   To the extent the NYS Court Officer Defendants are moving to dismiss, they allege the Complaint is conclusory.  *Id.* at 17.

As previously noted, to state a claim under Section 1983, a plaintiff must allege conduct attributable to a person acting under color of state law which deprived Plaintiff of a right secured by the Constitution of the United States.  *See Feingold v. New York*, 366 F.3d 138, 159 (2d Cir. 2004) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).  Therefore, a Section 1983 claim has two essential elements:  (1) the defendant acted under color of state law, and (2) as a result of the defendant's actions, the plaintiff suffered a denial of his federal statutory rights, or his constitutional rights or privileges.  *See Annis v. County of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998); *Quinn v. Nassau County Police Dep't*, 53 F. Supp. 2d 347, 353 (E.D.N.Y. 1999) (Section 1983 "furnishes a cause of action for the violation of federal rights created by the Constitution") (citation omitted).

Here, Plaintiff asserts the bare essentials to support a § 1983 claim.  First, there is no dispute that the Defendant NYS Court Officers were acting under color of state law then they arrested the Plaintiff in Family Court.  Second, taking Plaintiff's allegations of physical abuse at the hands of the NYS Court Officers as true, as the Court must, I find that Plaintiff's allegations are sufficient to state a denial of his constitutional rights.

In the alternative, the NYS Court Officer Defendants request that Plaintiff describe the allegations against each defendant separately and that Plaintiff only allege objective facts. *Id.* Rule 12(e) provides in pertinent part:

> A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response. The motion must be made before filing a responsive pleading and must point out the defects complained of and the details desired.

Fed. R. Civ. P. 12(e). Based on the language within Rule 12(e), courts have determined that a motion for a more definite statement "will be granted only when the complaint is so vague and ambiguous that the defendant cannot frame a responsive pleading." *Frederick v. Koziol*, 727 F. Supp. 1019, 1021 (E.D. Vir. 1990). Further, Rule 12(e) is looked upon unfavorably since it is not to be used in lieu of the discovery process. *See Erickson v. Hunter*, 932 F. Supp. 1380, 1384 (M.D. Fl. 1996) ("motions for more definite statement are disfavored. Discovery is the correct vehicle to obtain information necessary for trial.") (citations omitted); *Frederick*, 727 F. Supp at 1021-22 ([s]uch a motion is not a substitute for the discovery process, and where the information sought by the movant is available or properly sought through discovery; the motion should be denied.").

It is the Court's view that the allegations set forth against the Defendant NYS Court Officers are not so vague and ambiguous that the Defendants cannot frame a responsive pleading. Indeed, the examples of "objective factual statements" sought by the NYS Court Officers are facts that can and will be obtained during discovery. *See State Defs.'s Mem.* at 17-

18.  On that basis, the motion, to the extent it seeks a more definite statement under Rule 12(e) should be DENIED.

### C.    Chance to Amend

Under the Federal Rules, a "court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).  Further, "when addressing a *pro se* complaint, a district court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Thompson v. Carter*, 284 F.3d 411, 416 (2d Cir. 2002).  Although the usual practice upon granting a motion to dismiss is to allow leave to replead, a court may dismiss without leave to amend when amendment would be futile (*Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003)), or when the "substance of the claim pleaded is frivolous on its face." *Bloom v. United States Gov't*, 02 Civ. 2352, 2003 WL 22327163, at *8 (S.D.N.Y. Oct. 10, 2003) (quoting *Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir. 1998)).  A claim is frivolous when it is vague and incomprehensible, or when it is supported by baseless factual allegations "describing fantastic or delusional scenarios." *Bloom*, 2003 WL 22327163, at *8 (citations omitted).

In the present case, it is clear that  the various City and State entities and agents are either immune from suit or Plaintiff's claims against them are barred by the *Rooker-Feldman* doctrine.  Thus, after carefully considering the Complaint, Defendants' Motion to Dismiss and Plaintiff's opposition, it is my belief that granting Plaintiff leave to replead would be futile as against all Defendants with the exception of NYC Fire Dept EMS Paramedic John Doe  #1.

Notwithstanding the foregoing considerations, Plaintiff has been proceeding *pro se*, and Judge Feuerstein may with to allow Plaintiff an opportunity to file an Amended Complaint. *See Thompson v. Carter*, 284 F.3d 411, 419 (2d Cir. 2002) (citing *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991)) (noting that when addressing a *pro se* complaint, a district court should not dismiss without granting leave to amend at least once "where a liberal reading of the complaint gives any indication that a valid claim might be stated"). I leave that determination to Judge Feuerstein.

## VI.    CONCLUSION

For the reasons discussed above, I respectfully recommend to Judge Feuerstein that Defendants' motion to dismiss the Complaint be GRANTED as to all Defendants, with the exception of Defendants NYS Court Officer Captain John Doe #1 and NYS Court Officers John/Jane Doe 1,2,3,4. In addition, I respectfully recommend that the motion for a more definite statement by Defendants NYS Court Officer Captain John Doe #1 and NYS Court Officers John/Jane Doe 1,2,3,4 be DENIED. Lastly, since Plaintiff's five motions seeking various relief deal specifically with the underlying Family Court Order and judgment enforcement mechanisms, none of which concern the NYS Court Officers, I further recommend that Plaintiff's five pending motions be DENIED as moot.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. *See also* Fed. R. Civ. P. 6(a) and (e). Such objections shall be filed with the Clerk of the Court via ECF, **except in the case of a party**

**proceeding *pro se*. *Pro Se* Plaintiff Lesly Remy must file his objections in writing with the Clerk of the Court within the prescribed time period noted above. A courtesy copy of any objections filed is to be sent to the chambers of the Honorable Sandra J. Feuerstein, and to my chambers as well. Any requests for an extension of time for filing objections must be directed to Judge Feuerstein prior to the expiration of the (14) day period for filing objections. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir.), *cert. denied*, 522 U.S. 883 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).**

                                    **SO ORDERED.**

Dated: Central Islip, New York
            August 18, 2010

                                    /s/ A. Kathleen Tomlinson
                                    A. KATHLEEN TOMLINSON
                                    U.S. Magistrate Judge