FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT, E.D.N.Y.

★ NOV 09 2011 ★

LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
LESLY REMY,

                Plaintiff,

      -against-

FRED BENERI, DEBRA BARTICHEK,
JOSEPH GUZZARDO, MARIA COOPER,
and JAMES DRAKOS,

                Defendants.
----------------------------------------X

**ORDER**
09-CV-4444 (SJF) (AKT)

FEUERSTEIN, J.

I.    Introduction

On October 16, 2009, pro se plaintiff Lesly Remy ("plaintiff") commenced this action against a number of New York City and New York State agencies and employees, alleging violations of his constitutional rights pursuant to 42 U.S.C. § 1983. On September 29, 2010, this Court adopted the Report and Recommendation of Magistrate Judge A. Kathleen Tomlinson, and ordered that the complaint be dismissed as to all defendants except five (5) New York State court officers. [Docket Entry No. 66]. On February 23, 2011, plaintiff filed an amended complaint, in which he alleges ten (10) causes of action against the same five (5) court officer defendants. [Docket Entry No. 92].

Trial was scheduled for September 19, 2011. On September 9, 2011, defendants filed a "Pre-Trial Memorandum of Law" requesting judgment as a matter of law as to all claims in the

1

amended complaint. ("Def. Br.") [Docket Entry No. 146].[1] For the reasons that follow, defendants' motion is granted.

II. Background

    A. Factual Background.

This action arises from an incident that occurred at Queens County Family Court on July 10, 2007. Amended Complaint ("Amend. Compl.") [Docket No. 92], at 1. On that date, plaintiff and the mother of his son appeared at the Family Court for a hearing as to plaintiff's child support obligations. See Pl. Ex. 11 ("Hearing Tr.") [Docket Entry No. 165-1]. After hearing testimony from both parties, Support Magistrate Michael J. Fondacaro adjourned the hearing. Hearing Tr. at 18-19; Deposition of Lesly Remy ("Remy Dep.") [Docket Entry No. 147] at 28. Plaintiff objected to the adjournment, and the Support Magistrate requested that plaintiff be removed from the courtroom by court officers. Remy Dep. at 29; Hearing Tr. at 19.

Plaintiff testified that defendant Officer Bartichek asked him to leave the courtroom, to which he replied that he would "leave at [his own] pace."[2] Remy Dep. at 29. Officer Bartichek

---

[1] At a conference on September 19, 2011, plaintiff was advised that the Court would interpret the "Pre-Trial Memorandum of Law" as a motion for summary judgment, and plaintiff was granted leave to file a second opposition to the memorandum. Thus, even though defendants' motion was not labeled a motion for summary judgment, the Court finds that plaintiff understood the potentially dispositive nature of the motion.

[2] Plaintiff later contradicted his own testimony on this point, stating: "I didn't say I was leaving at my own pace. I said, I'm leaving." Remy Dep. at 32. The hearing transcript reflects that, as plaintiff continued to protest, an unidentified court officer directed plaintiff to "step out"

2

then "blocked" him from walking out of the courtroom and "told [him] to get against the wall." Id. According to plaintiff, Officer Bartichek then "push[ed him] against the wall" and placed both of her hands on his upper back. Id. at 35. At that point, plaintiff was aware that the court officers were attempting to place him under arrest. Id. Additional officers entered the courtroom, and plaintiff "tried to cross [his] arms to avoid being handcuffed." Id. at 36. Plaintiff alleges that he heard "yelling," "general chaos," and someone "calling [him] a nigger." Id. at 41. Plaintiff was brought to the ground, id. at 43, and officers placed handcuffs and "leg irons" on him. Id. at 39. Plaintiff testified that Officer Drakos subsequently "hyperextend[ed his] wrists," "prodd[ed his] back with some kind of instrument," and "pushed" him into a bathroom stall. Id. at 45, 49.

Two of the court officers – defendants Bartichek and Cooper – sought medical attention after the incident. Joint Pre-Trial Order [Docket Entry No. 141] at 15; Def. Br. at 10. In a report dated July 10, 2007, Bartichek wrote that as a result of the incident, she "suffered a strained/sprained back, bruises and contusions to chest, ribs, arms" and "had difficulty breathing and chest pains." Def. Ex. B [Docket Entry No. 164-2]. Officer Cooper also filed a report stating that she "suffered [a] strained/sprained right shoulder and contusions to [her] upper torso and arms." Def. Ex. C [Docket Entry No. 164-2].

Plaintiff claims that after he was arrested, he was placed in a "bathroom stall" at the Family Court for "three to five hours." Remy Dep. at 44-47. Over the course of the next day, plaintiff was transported to Jamaica Hospital's Psychiatric Unit, then to the 103rd police precinct, then to Central Booking, then back to Jamaica Hospital, and then back to Central

---

a number of times, and warned, "We'll arrest you." Pl. Ex. 11 at 19-20.

Booking. Joint Pre-Trial Order at 2-3. Plaintiff was subsequently released on $15,000 bail. Remy Dep. at 87-88.

Plaintiff was charged with two counts of assault in the second degree, two counts of assault in the third degree, obstructing governmental administration in the second degree, resisting arrest, and disorderly conduct. Joint Pre-Trial Order at ¶ 6; Def. Ex. E [Docket Entry No. 164-3]. On December 11, 2007, plaintiff pleaded guilty to one count of assault in the third degree. Joint Pre-Trial Order at 3. On August 4, 2008, he was sentenced to a one-year conditional discharge. Id. The guilty plea and conviction have not been vacated or otherwise set aside. Id. at 4.

Plaintiff alleges that defendants' actions caused him "irreparable pain [and] suffering," that he remained "almost bedridden" for three months following his arrest, and that he suffered from nightmares, lethargy, and headaches. Amend. Compl. at 1; Remy Dep. at 76, 78. However, he did not seek medical attention for the alleged injuries he suffered and took no medications other than non-prescription sleeping pills. Id. at 75-78.

B.  Prior Proceedings.

Plaintiff brought this action on October 16, 2009. The initial complaint named dozens of defendants, including five court officers involved in plaintiff's arrest, Support Magistrate Fondacaro, two clerks employed at the Queens Family Court, various New York State legislators, and New York City Mayor Michael Bloomberg. [Docket Entry No. 1]. Defendants moved to dismiss the complaint. [Docket Entry Nos. 48, 55].

On August 18, 2010, pursuant to a referral, Magistrate Judge A. Kathleen Tomlinson issued a Report and Recommendation recommending that defendants' motions to dismiss be granted except as to plaintiff's excessive force claims against the five (5) New York State court officers, who were identified in the complaint as "John Doe" and "Jane Doe." [Docket Entry No. 61] ("Report") at 36, 39. Magistrate Judge Tomlinson found that plaintiff asserted the "bare essentials" to support a claim pursuant to Section 1983. Report at 36. On September 29, 2010, this Court adopted the Report in its entirety. [Docket Entry No. 66].

On January 28, 2011, Magistrate Judge Tomlinson granted plaintiff leave to file an amended complaint. [See Docket Entry No. 86]. On February 8, 2011, the parties jointly moved to amend the caption to include the names of all but one of the "John Doe" and "Jane Doe" court officer defendants. [Docket Entry No. 88]. Defendant Fred Beneri was subsequently identified as the sole remaining "John Doe" defendant, and the caption was amended accordingly. [Docket Entry Nos. 108, 121].

Plaintiff filed an amended complaint on February 23, 2011. [Docket Entry No. 92]. The amended complaint asserts ten (10) causes of action against six (6) court officer defendants[3], including, inter alia, malicious prosecution, cruel and unusual punishment in violation of the Eighth Amendment, fraud, excessive force in violation of 42 U.S.C. § 1983, and conspiracy to deprive plaintiff of his civil rights in violation of 42 U.S.C. § 1985.

On September 9, 2011, defendants filed a "Pre-Trial Memorandum of Law," which seeks judgment as a matter of law with respect to all ten (10) counts in the amended complaint.

---

[3] On May 9, 2011, plaintiff voluntarily discontinued this action as to defendant Myles McKenna, [Docket Entry No. 120], leaving five (5) defendants remaining in the case.

[Docket Entry No. 146]. Plaintiff filed a response on September 13, 2011. [See Docket Entry No. 154]. During the parties' appearance on September 19, 2011, plaintiff was advised that defendants' memorandum of law would be treated as a potentially dispositive motion, and that plaintiff would be given an additional opportunity to submit a written opposition. Plaintiff filed a supplemental brief in opposition on September 23, 2011, [Docket Entry No. 162], and defendants filed a reply on September 28, 2011. [Docket Entry Nos. 164-165].

III.   Analysis

    A.   Summary Judgment Standard

"Summary judgment must be granted where the pleadings, the discovery and disclosure materials on file, and any affidavits show 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011) (quoting Fed. R. Civ. P. 56(a)). "In ruling on a summary judgment motion, the district court must resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment and determine whether there is a genuine dispute as to a material fact, raising an issue for trial." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir. 2007) (internal quotations and citations omitted).

"A fact is material when it might affect the outcome of the suit under governing law." Id. An issue of fact is genuine only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 91 L. Ed.

2d 202, 106 S. Ct. 2505 (1986). The moving party bears the initial burden of establishing the absence of any genuine issue of material fact, after which the burden shifts to the nonmoving party to establish the existence of a factual question that must be resolved at trial. See Koch v. Town of Brattleboro, Vermont, 287 F.3d 162, 165 (2d Cir. 2002) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

"In order to defeat a motion for summary judgment supported by proof of facts that would entitle the movant to judgment as a matter of law, the nonmoving party is required under Rule 56(e) to set forth specific facts showing that there is a genuine issue of material fact to be tried. * * *. If the nonmoving party does not so respond, summary judgment will be entered against him." Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993) (citations omitted). The nonmoving party "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible * * *, or upon the mere allegations or denials of the [nonmoving] party's pleading." Id. (internal quotation marks and citations omitted).

B. The Amended Complaint

1. Excessive Force (Count Six)

Even reading the amended complaint liberally, plaintiff's excessive force claim appears to be directed only at defendants Bartichek, Drakos, and possibly Beneri. Plaintiff specifically testified at his deposition that he "didn't have any contact" with Officer Cooper, Remy Dep. at 70; see also Amend. Compl. at 7 ("[a] confrontation with her never [o]ccurred"), and the amended complaint does not allege that plaintiff had any contact with Officer Guzzardo. Thus,

Count Six must be dismissed as to defendants Cooper and Guzzardo.

Specifically, plaintiff alleges that Officer Bartichek "block[ed his] exit" from the courtroom and "push[ed him] against the wall." Amend. Compl. at 6; Remy Dep. at 35. Plaintiff further claims that defendant Drakos "hyper extend[ed]" his wrists while he was handcuffed, causing him "excruciating pain," jabbed him in the "small of [his] back" with "a blunt instrument or tool," and "violently" pushed him into a bathroom stall. Amend. Compl. at 6, 9-10; Remy Dep. at 35. Plaintiff also claims that Beneri "intimidated" him, "threaten[ed]" to spray him with his "chemical agent canister," and "yell[ed] directly in [his] face." Amend. Compl. at 4.[4]

An excessive force claim arising from an arrest is properly analyzed in the context of the Fourth Amendment. See Graham v. Connor, 490 U.S. 386, 394 (1989). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. at 396. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." Id. (internal quotation marks and citation omitted). The relevant question is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Id. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about

---

[4] Although plaintiff also claims that former defendant McKenna "tightened [his] handcuffs so tight it caused [him] heavy swelling in both wrists," Amend. Compl. at 8, this allegation is insufficient to support a claim of excessive force. See Wims v. N.Y. City Police Dept., No. 10 Civ. 6128, 2011 WL 2946369 (S.D.N.Y. July 20, 2011) ("Merely placing tight handcuffs on a suspect is not enough for an excessive force claim."). In any event, plaintiff has voluntarily discontinued this action as against McKenna.

8

the amount of force that is necessary in a particular situation." Id. at 396-97.

Here, the evidence of excessive force is insufficient to survive defendants' motion for summary judgment. Plaintiff did not obey the directives of the Support Magistrate or of the court officers, and he actively resisted arrest when the court officers attempted to handcuff him. Remy Dep. at 29, 36; see also Hearing Tr. at 19-20. Plaintiff later pleaded guilty to assaulting two of the officers who placed him under arrest. Joint Pre-Trial Order at 3; [Docket No. 165]. Under the circumstances, it cannot be said that the defendants acted unreasonably, and the Court finds that the level of force alleged in the amended complaint was not excessive as a matter of law. See, e.g., Richardson v. Providence, No. 09-CV-4647, 2011 WL 3701887, at *7 (E.D.N.Y. Aug. 22, 2011) (plaintiff's struggle entitled officer to use particular level of force during arrest); Sassower v. City of White Plains, No. 89-CV-1267, 1995 WL 222206, at *6-7 (S.D.N.Y. Apr. 13, 1995).[5]

In his opposition, plaintiff cites to the case of Jones v. Buchanan, 325 F.3d 520 (4th Cir. 2003), in which the Fourth Circuit reversed the lower court's finding that the deputy sheriff

---

[5] The Court recognizes that plaintiff's original pleading alleged that one officer "slammed a door to [his] head" and that others "kicked and stomped [him] from behind." The amended complaint, however, lacks these allegations. Although "[i]t is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect," Int'l Controls Corp. v. Vesco, 556 F.2d 665, 668 (2d Cir. 1977), given plaintiff's pro se status, the Court has reviewed the record for any evidence that any of the remaining defendants "slammed a door to [his] head" or "kicked and stomped him." The Court has found no such evidence. Although plaintiff describes the incident in detail during his deposition, he does not describe any use of force that could be considered excessive. Remy Dep. 32-45. Plaintiff evidently deposed several defendants and witnesses, but he has not submitted any transcripts of the depositions, and specifically requested during a November 3, 2011 telephone conference that the Court decide this motion without all of the transcripts. In any event, plaintiff has not identified any evidence, even after completion of discovery, indicating that any of the five (5) remaining defendants used excessive force or otherwise violated the law. See Husbands ex rel. Forde v. City of N.Y., No. 05 Civ. 9252, 2007 WL 2454106, at *11 (S.D.N.Y. Aug. 16, 2007).

defendant did not subject plaintiff to excessive force as a matter of law. Plaintiff's Opposition to Motion for Summary Judgment ("Pl. Opp.") [Docket Entry No. 162] at 18-19. In Jones, however, plaintiff alleged that the defendant "knocked [him] down on the floor," "jumped on [him]," and slammed his knee into plaintiff's neck and ribs, even though he was in a processing room at the police station with his hands handcuffed behind his back. In this case, the level of force exerted by defendants – which appears to have been considerably less severe than that exerted in Jones – was in response to plaintiff's attack upon the officers and his active resistance to their efforts to arrest him.

With respect to the allegations against Beneri, it is settled that "verbal harassment or even threats alone" are not cognizable under Section 1983. Cotz v. Mastroeni, 476 F.Supp.2d 332, 372 (S.D.N.Y. 2007). Nor can plaintiff establish liability under Section 1983 on a respondeat superior basis against Beneri or any other defendant because "vicarious liability is inapplicable to . . . § 1983 suits." Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1948, 173 L.Ed.2d 868 (2009). See Amend. Compl. at 3 (alleging that officers acted under "direct supervision" of Captain Beneri).

2. Plaintiff's Remaining Claims.

   a. Wrongful Conviction, False Imprisonment, and Malicious Prosecution (Count One)

In Count One of the amended complaint, plaintiff challenges his criminal conviction, alleging that he was "wrongful[ly] convict[ed]" of state criminal charges, that he was "false[ly] imprisoned," and that he was prosecuted "malicious[ly]." Amend. Compl. at 2. This claim,

10

however, is precluded by Heck v. Humphrey, 512 U.S. 477 (1994), which states in pertinent part:

> "[T]o permit a convicted criminal defendant to proceed with a malicious prosecution claim would permit a collateral attack on the conviction through the vehicle of a civil suit . . . We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254."

Heck, 512 U.S. at 484-87 (internal quotation marks and citations omitted). Plaintiff has presented no evidence that his conviction or sentence were reversed on appeal, expunged by executive order, declared invalid, or called into question by the issuance of a writ of habeas corpus. On the contrary, plaintiff testified that he had not taken any legal action to challenge his guilty plea. Remy Dep. at 74-75. Plaintiff states in his opposition that he "would not have signed a plea agreement with the DA" had he known certain facts about his attorney at the time, Pl. Opp. at 5-6, but it is well settled that plaintiff cannot create an issue of fact by recanting earlier testimony. Margo v. Weiss, 213 F.3d 55, 60-61 (2d Cir. 2000). For those reasons, defendants are granted judgment as a matter of law with respect to Count One.

### b. Cruel and Unusual Punishment (Count Two)

In Count Two, plaintiff alleges "cruel and unusual punishment" in violation of the Eighth Amendment, claiming he was subjected to "excessive fines," "intimidation," "degradation," and "humiliation." Amend. Compl. at 2. "[T]he Eighth Amendment applies only to claims of cruel and unusual punishment imposed on an individual after he or she has been convicted of a crime."

11

Younger v. City of N.Y., 480 F.Supp.2d 723, 730 (S.D.N.Y. 2007) (citing Whitley v. Albers, 475 U.S. 312, 318-19, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986)). Thus, to the extent plaintiff claims that his arrest and subsequent confinement were cruel and unusual, these claims implicate the Fourth and Fourteenth Amendments. Martin v. County of Nassau, 692 F.Supp.2d 282 (E.D.N.Y. 2010) (citing Weyant v. Okst, 101 F.3d 845, 856 (2d Cir. 1996)). The amended complaint, however, does not contain any allegations of "intimidation," "degradation," or "humiliation" sufficiently serious to establish a constitutional claim. Similarly, there is no evidence in the record of any "excessive fines." Therefore, judgment for defendants is also appropriate as to Count Two.

        c.      "Intimidating a Witness" and "Conspiracy to Interfere with Civil Rights" (Counts Three and Four)

In Counts Three and Four, plaintiff alleges that defendants committed violations of 42 U.S.C. §§ 1985(2) and 1985(3) by "intimidating a witness in a court" and conspiring to deprive him of his civil rights. Plaintiff also alleges that he was "overcharg[ed]" by the prosecution in order to force him into accepting a plea bargain. Amend. Compl. at 2.

        i.      42 U.S.C. § 1985(2)

42 U.S.C. § 1985(2) "applies only to conspiracies to prevent witnesses from appearing in *federal* courts." Herrera v. Scully, 815 F. Supp. 713, 726 (S.D.N.Y. 1993) (emphasis in original); see also Fox v. County of Yates, No. 10-CV-6020, 2010 WL 4616665, at *4 (W.D.N.Y. Nov. 12, 2010). Because plaintiff does not allege that defendants conspired to

prevent him from testifying in a federal court, this claim must be dismissed.

ii. 42 U.S.C. § 1985(3)

"Section 1985(3) clearly provides a remedy for conspiracies to deprive persons of their rights under the United States Constitution." Pabon v. N.Y. City Transit Authority, 703 F.Supp.2d 188, 202 (E.D.N.Y. 2010). "Such claims, however, must be predicated upon a causal link between the conduct complained of and animus or invidious discrimination that is based upon the plaintiff's membership in a protected class." Id. Although the complaint is unclear, plaintiff apparently alleges that his arrest, the level of force used, his subsequent detention, and his prosecution were all a product of invidious discrimination against him on the basis of his race. See Amend. Compl. at 2-3.

Plaintiff's allegations of racial discrimination are largely conclusory. Plaintiff does allege that while he was being arrested in the courtroom, an unidentified individual called him "nigger" and/or "nigger C.O."[6] Remy Dep. at 41-42. However, the Court finds that such isolated evidence of a racial slur, by an unidentified individual – who may or may not be a defendant in this action – cannot create an issue of fact regarding the motivations of the defendants accused of violating plaintiff's civil rights. Hickey v. City of N.Y., No. 01 Civ. 6506, 2004 WL 2724079, at *22 (S.D.N.Y. Nov. 29, 2004).

Finally, any claim that plaintiff was "overcharged" amounts to a collateral attack on his conviction through the vehicle of a civil suit, and is therefore barred by Heck v. Humphrey. In

---

[6] According to plaintiff, "C.O." stands for "corrections officer," a reference to plaintiff's former profession.

any event, charging decisions are made by the prosecution, not the defendant court officers. Counts Three and Four are dismissed.

        d.      Excessive Bail in Violation of the Eighth Amendment (Count Five)

In Count Five, plaintiff alleges that his $15,000 bail was "excessive" and defendants "interfere[d]" with "bail procedures." Amend. Compl. at 2. Specifically, plaintiff alleges that defendant Beneri appeared at his arraignment, at which point he "talk[ed] to prosecutors and request[ed] [e]xcessive bail." Id. at 5.

Even if the defendant court officers could be held liable for allegedly excessive bail, plaintiff's claim is moot "because the Eighth Amendment protection against excessive bail may only be vindicated prior to trial." MacLean v. Lewin, No. 10-CV-0306, 2011 WL 2971771, at *4 (W.D.N.Y. July 20, 2011) (citing Murphy v. Hunt, 455 U.S. 478, 481-82 (1982)). Because plaintiff pleaded guilty to assault in the third degree in December 2007, Count Five must be dismissed. See Lombard v. Mazzuca, No. 00 CV 74622(JG), 2003 WL 22900918, at *6 (E.D.N.Y. Dec. 8, 2003) (excessive bail claim becomes moot once defendant is convicted).

        e.      "Interference in Family Matters" and "Violation of Parental Visitation" (Counts Seven and Eight)

Counts Seven and Eight allege "[u]nauthorized interference in plaintiff [sic] family matters" and "[v]iolation of parental visitation by Security forces" in violation of the Fourteenth Amendment to the United States Constitution. Amend. Compl. at 2.

14

Defendants argue that these claims are barred by the Rooker-Feldman doctrine because they "reflect [plaintiff's] unhappiness with the Family Court's decision." Def. Br. at 5. The Court agrees. Under the Rooker-Feldman doctrine, this Court lacks subject matter jurisdiction to review the final judgment of a state court. Morrison v. City of N.Y., 591 F.3d 109, 112 (2d Cir. 2010). For the Rooker-Feldman doctrine to apply:

> "First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must 'complain [] of injuries caused by [a] state-court judgment.' Third, the plaintiff must 'invit[e] district court review and rejection of [that] judgment [].' Fourth, the state-court judgment must have been 'rendered before the district court proceedings commenced' – i.e., Rooker-Feldman has no application to federal-court suits proceeding in parallel with ongoing state-court litigation."

McKithen v. Brown, 481 F.3d 89, 97 (2d Cir. 2007).

Although plaintiff directs the allegations in Count Eight toward the "security forces," plaintiff fails to state a claim against the defendant court officers. For those reasons, the Court grants defendants judgment as a matter of law as to Counts Seven and Eight.

    f.  Fraud (Count Nine)

In Count Nine, plaintiff alleges "intentional fraud" and "misrepresentation" intended to "deprive the plaintiff of due process." Amend. Compl. at 3. Specifically, plaintiff alleges that: (1) Officer Bartichek "failed to corroborate the arresting officer's report" and was responsible for "falsifications" that "caused [him] wrongful conviction"; (2) Cooper "knowingly lied" in an "aided report"; and (3) Guzzardo reported "materially false information" that was included in the criminal complaint. Amend Compl. at 6-10.

In other words, this claim attacks the evidence underlying plaintiff's criminal conviction.

15

Such a claim presupposes that plaintiff was wrongly convicted, and is therefore barred by Heck v. Humphrey. See Heck, 512 U.S. at 486-87; see also Peay v. Ajello, 470 F.3d 65, 68 (2d Cir. 2006); Fernandez v. Holzbach, No. 3:04-CV-1664 (RNC), 2007 WL 1467182 (D. Conn. May 15, 2007). As discussed supra, plaintiff has not shown that his convictions have been reversed, expunged, or declared invalid. Moreover, plaintiff's general allegation of "economic deprivation" fails to state a claim upon which relief can be granted. Thus, Count Nine is dismissed.

        g.      Deprivation of First Amendment Rights (Count Ten)

In Count Ten, plaintiff alleges that Officer Barticheck "impeded [his] very 1st amendment right of free speech" when he protested Support Magistrate Fondacaro's decision to adjourn the hearing. Amend Compl. at 3, 5-6. To recover on a First Amendment claim pursuant to Section 1983, "a plaintiff must demonstrate that his conduct is deserving of First Amendment protection and that the defendants' conduct of harassment was motivated by or substantially caused by his exercise of free speech." Rattner v. Netburn, 930 F.2d 204, 208 (2d Cir. 1991) (citations omitted).

Plaintiff's speech in the courtroom was not "deserving of First Amendment protection." "The function of a courthouse and its courtrooms is principally to facilitate the smooth operation of a government's judicial functions . . . . These purposes are likely to be incompatible with expressive activities inside a courthouse." Huminski v. Corsones, 396 F.3d 53, 91 (2d Cir. 2005). A courthouse is therefore considered a "non-public" forum. Washpon v. Parr, 561

F.Supp.2d 394, 409 (S.D.N.Y. 2008). "Inside a non-public forum, governmental restrictions on expressive conduct or speech are constitutional so long as they are reasonable in light of the use to which the forum is dedicated and 'are not an effort to suppress expression merely because public officials oppose the speaker's view.'" Id. at 408-09 (S.D.N.Y. 2008) (citation omitted).

In this case, any restrictions on plaintiff's expression were reasonable in light of the fact that the Support Magistrate had adjourned the hearing and that plaintiff failed to obey the order to leave the courtroom. Washpon, 561 F.Supp.2d at 409 (restrictions on speech reasonable when arrestee failed to leave courthouse). This claim is also dismissed.

IV. Conclusion

For the foregoing reasons, defendants' motion for summary judgment is granted. Defendants' motion in limine [Docket Entry No. 144] is denied as moot.

In accordance with Rule 77(d) of the Federal Rules of Civil Procedure, the Clerk of Court shall serve a copy of this order with notice of entry upon all parties, including mailing a copy of this order to the pro se plaintiff, and record such service on the docket. The Clerk of Court is directed to close this case.

**SO ORDERED.**

                                                                  _____
                                                                  Sandra J. Feuerstein
                                                                  United States District Judge

Dated:       November 9, 2011
              Central Islip, New York